UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brandon M., | No. 23-cv-2863 (DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michelle King, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Brandon M. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 405(g). This matter is before the Court on the parties' cross-briefs seeking judgment on the administrative record. (Docs. 17 (Plaintiff's brief), 19 (Commissioner's brief), 20 (Plaintiff's reply brief).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. As a result of that review, the Court recommends that the Commissioner's denial of benefits be affirmed and that judgment be granted in her favor.

## BACKGROUND

On May 20, 2021, Plaintiff applied for benefits, alleging he had been disabled since June 15, 2016. (Tr.[1] at 71, 194-97.) The Social Security Administration ("SSA") denied his claim initially (Tr. at 62-71), and upon reconsideration (Tr. at 72-82). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 99-100.) The ALJ held a hearing on October 3, 2022. (Tr. at 37-61.) Counsel represented Plaintiff at the hearing (Tr. at 40-42), and Plaintiff testified on his own behalf (Tr. at 44-55). A vocational expert also testified during the hearing. (Tr. at 55-60.)

On October 27, 2022, the SSA sent Plaintiff notice of an unfavorable decision. (Tr. at 18-20 (notice), 21-32 (decision).) In her decision, the ALJ found that Plaintiff had a number of severe impairments, including generalized anxiety disorder, major depressive disorder, cervical and lumbar degenerative disc disease, obesity, thyroid disorder, and chronic pain disorder. (Tr. at 23.) The ALJ also noted that Plaintiff had a number of additional impairments that did not qualify as severe, including Bell's palsy, migraines, irritable bowel syndrome, pain associated with an incisional hernia, gastroesophageal reflux disease, hyperthyroidism, and fibromyalgia. (Tr. at 24-25.) Specifically as it relates to fibromyalgia, the ALJ stated:

> I have considered [Social Security Ruling] 12-2 in evaluating the claimant's fibromyalgia. While there is no listing for the impairment of fibromyalgia, it has potential effects in causing or contributing to impairments in some body

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on February 16, 2024. (Doc. 16.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the document rather than the exhibit number.

systems covered by listings.[2] In this instance, the effects of the claimant's fibromyalgia, in combination with his other impairments, do not rise to the level of severity such that the claimant would meet a listing. There is no indication from the available medical record that fibromyalgia increases the severity of the functional limitations due to his other impairments to such an extent that the claimant would meet or equal a listing.

(Tr. at 25.)

Despite Plaintiff's mental and physical impairments, the ALJ found that he was not disabled. (Tr. at 31-32.) In doing so, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform light work[4] with the following additional limitations: only occasionally climb ramps and stairs; occasionally balance on narrow, slippery, or moving surfaces; have no more than occasional concentrated exposure to atmospheric conditions (exposure to fumes, noxious odors, and the like); never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights and dangerous moving mechanical parts; able to understand, remember, and carry out simple instructions not requiring a specific production pace, such as assembly line work; can make simple work-related decisions; and can tolerate occasional changes in a routine work setting. (Tr. at 26.) The ALJ credited the testimony of the vocational expert that Plaintiff could still perform

---

[2] The ALJ used the term "listing" in the section of her decision that analyzed whether Plaintiff had "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. at 24.)

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[4] By regulation, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

jobs in the national economy given these limitations, including as a Mail Sorter (Dictionary of Occupational Titles ("DOT") No. 209.687-026), Collator (DOT No. 208.685-010), and Marker (DOT 209.587-034). (Tr. at 31, 57-58.)

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, but the Appeals Council denied her request for review on July 28, 2023 (Tr. at 4-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this lawsuit seeking judicial review of the SSA's decision.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520(a)(4) for evaluating DIB claims.[5] Rather, he asserts that the ALJ erred by not considering the severity of Plaintiff's fibromyalgia at step two of that process, and that this legal error was not harmless because it resulted in an inaccurate RFC.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might

---

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to decide whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ uses the wrong legal standard or incorrectly applies the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

**I. THE ALJ'S ANALYSIS OF FIBROMYALGIA DOES NOT REFLECT ERROR, AND SUBSTANTIAL EVIDENCE IN THE RECORD AS A WHOLE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF'S FIBROMYALGIA WAS A NON-SEVERE IMPAIRMENT.**

Plaintiff's primary argument is that the ALJ erred at step two of the sequential analysis with respect to fibromyalgia.[6] According to Plaintiff, the ALJ inexplicably omitted

---

[6] As explained by another Court in this district, "Fibromyalgia is a syndrome of chronic pain of musculoskeletal origin and fatigue, but with an uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally, there must be point tenderness in

5

any discussion of fibromyalgia from her step two analysis, even though in prior proceedings state agency medical consultants found Plaintiff's fibromyalgia to be severe. (Doc. 17 at 9.) For her part, the Commissioner frames the issue as one of substantial evidence, asserting that regardless of the ALJ's step two evaluation, she fully considered Plaintiff's limitations—including those caused by fibromyalgia—in fashioning his RFC. (Doc. 19 at 9-11.)

The ALJ's actions were not, as Plaintiff suggests, inexplicable. Rather, they reflect an ordered analysis of Plaintiff's claimed impairments. It is true that the ALJ did not discuss Plaintiff's fibromyalgia during her step two analysis. (Tr. at 23-24.) But this was for good reason: step two of the evaluative process is one area where an ALJ must consider which impairments qualify as severe, 20 C.F.R. § 404.1520(a)(4)(ii), but not the only area, 20 C.F.R. § 404.1520(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairments.").

As the ALJ makes clear as a part of her *step three* analysis, she considered Plaintiff's fibromyalgia and determined that alone or in combination with other impairments, it did not rise to the level of a severe impairment. (Tr. at 25 ("In this instance, the effects of claimant's fibromyalgia, in combination with his other impairments, do not rise to the level of severity such that the claimant would meet a listing.").) The ALJ specifically indicated she had considered Social Security Ruling ("SSR") 12-2P, *found at* 2012 WL 31049869 (July 25, 2012), which sets forth the evaluative framework for disability claims involving

---

at least 11 of 18 specified sites." *Polly O. v. Kijakazi*, 20-cv-1820 (ECT/ECW), 2021 WL 6297542, at *17 (D. Minn. Dec. 16, 2021), *R. & R. adopted*, 2022 WL 62083 (D. Minn. Jan. 6, 2022) (citing Stedman's Medical Dictionary, Fibromyalgia (28th Ed. 2006)).

6

fibromyalgia, in considering the severity of Plaintiff's ailment. (Tr. at 25.) And, under SSR 12-2P, the SSA considers whether a person's fibromyalgia rises to the level of a severe, medically-determinable impairment at step two of the evaluative process, and (if not) moves on to step three of the process to determine whether alone or in combination with other impairments a person's fibromyalgia equals a listed impairment. 2012 WL 3104869, at *5-*6; *see also* 20 C.F.R. § 404.1520(a)(4) (five step evaluation process).

The ALJ's sequencing here aligned with the regulatory framework by first considering those impairments that the ALJ determined were severe (not including fibromyalgia), and then identifying those that did not qualify as severe (including fibromyalgia), in holistically assessing Plaintiff's RFC. The ALJ was not required to include in her step two analysis those impairments she found non-severe as well. That is especially true here, where the entirety of the ALJ's analysis *does* include those non-severe impairments, and specifically considers the breadth of the impairment Plaintiff complains had been ignored. There is no error here.

Further, substantial evidence in the record as a whole supports the ALJ's determination on the severity of Plaintiff's fibromyalgia. Although Plaintiff faults the ALJ's fibromyalgia analysis, the Court cannot find it unsupported by substantial evidence. The ALJ concluded that there was "no indication from the available medical record that fibromyalgia increases the severity of [Plaintiff's] functional limitations due to his other impairments." (Tr. at 25.) In other words, the ALJ found no medical support for the notion that fibromyalgia was the specific cause, or even an aggregating factor, for his symptoms. Plaintiff's own record citations drive home this point. In the overwhelming majority of

7

medical and mental health records Plaintiff cites for the fatigue that he attributes to fibromyalgia, there is no reference to fibromyalgia at all. (*See, e.g.*, Tr. at 275, 316, 344, 361, 526, 540 (indicating family history of fibromyalgia but no personal diagnosis), 571, 573-74, 584-85, 664-65, 673.) Some records, in fact, link his fatigue to other sources. (*See, e.g.*, Tr. 705-08.) Given such a record, a reasonable mind would accept the ALJ's conclusion that Plaintiff's fibromyalgia was non-severe. *Biestek*, 139 S. Ct. at 1154. In making this determination, the Court is mindful that the ALJ's decision should be reversed only if it falls outside "the available zone of choice," meaning that the ALJ's decision is not among the reasonable conclusions that can be drawn from the record evidence. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Finding substantial evidence in the record as a whole supports the ALJ's conclusion that Plaintiff's fibromyalgia is non-severe, the Court will not disturb this step two determination.

## II.   ANY STEP TWO ERROR WOULD BE HARMLESS NONETHELESS.[7]

The prevailing view in this district is that any alleged step two error is harmless if the ALJ properly considered the functional effects of a person's ailments in crafting an RFC. *Rosalind J. G. v. Berryhill*, 18-cv-82 (TNL), 2019 WL 1386734, at *20 (D. Minn. Mar. 27, 2019). After all, the ultimate question in a disability claim review concerns a

---

[7] The Court agrees with Plaintiff's framing of the issue as one involving legal error subject to harmless error review, rather than the Commissioner's focus on whether substantial evidence supported the ALJ's ultimate decision. This can be an important distinction: harmless error analysis asks whether the ALJ might have decided differently absent the mistake, *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020), whereas the substantial evidence standard is one that is particularly deferential to the underlying decision, *Austin*, 52 F.4th at 727-28.

person's functional limitations based on their symptoms, not their diagnoses. *Accord Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). And even where an ALJ's analysis has some oversights, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Grindley*, 9 F.4th at 629 (cleaned up and quotations omitted). Thus, the Court considers how the ALJ accounted for the effects of Plaintiff's physical and mental difficulties, regardless of the source.

Here, the ALJ found that Plaintiff could perform light work with some significant postural and environmental limitations. Plaintiff contends that if his fibromyalgia was genuinely taken into account, his RFC would have reflected a greater appreciation for his fatigue and pain. (Doc. 20 at 4-7.) But as stated above, many (if not most) of Plaintiff's own medical record attribute his fatigue to sources *other* than fibromyalgia. And Plaintiff's complaints of pain were addressed through a number of RFC limitations such as only performing light work and having climbing restrictions. The ALJ understood that Plaintiff sought further restrictions, but found them unwarranted because Plaintiff's asserted limitations were not fully consistent with the record evidence. (Tr. at 27-28.)

The Plaintiff faces other challenges too when it comes to harmless error. In asserting that the ALJ committed step-two error, Plaintiff notes that "[a]t both the initial and reconsideration levels of determination, the state agency medical consultants found plaintiff's fibromyalgia to be a *severe medical impairment*." (Doc. 17 at 9 (citing Tr. at 64, 75).) On this front, Plaintiff is correct. But what Plaintiff ignores is the remainder of these

9

state agency consultant's determinations: each of the consultants[8] concluded that Plaintiff had an RFC with very similar environmental and postural limitations that the ALJ ultimately crafted. (*Compare* Tr. at 26 *with* 66-67, 77-78.) Plaintiff cannot meet his harmless-error burden where the state agency consultants who deemed Plaintiff's fibromyalgia severe landed on a nearly identical RFC as the ALJ who Plaintiff claims committed error.

Reasonable minds would accept the ALJ's conclusion that Plaintiff retained the ability to perform light work with the postural and environmental limitations provided for in the RFC. Plaintiff's fatigue and pain, which he attributes to his fibromyalgia, were considered in fashioning his RFC. This is clear both because several of Plaintiff's other ailments included overlap of such symptoms, and because the ALJ specifically noted Plaintiff's alleged disabling conditions included fibromyalgia. (Tr. at 27.) In sum, because the ALJ properly considered all relevant factors and the subjective and objective medical evidence in the record in determining Plaintiff's RFC, the Court finds the ALJ reached a conclusion supported by the evidence and affirms the SSA's decision.

---

[8] The state agency consultant at the initial level was Dr. Paul Ossman and at the reconsideration level was Dr. Roxana Merz. (Tr. at 62-70 (initial determination), 73-82 (reconsideration level).) The ALJ's decision indicates she considered and credited both consultants' opinions as supportable by and consistent with the record as a whole. (Tr. at 29.)

## RECOMMENDATION

Based on the above, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Plaintiff's request for judgment on the administrative record (Doc. 17) be **DENIED**; and

2. Defendant's request for judgment on the administrative record (Doc. 19) be **GRANTED**.

DATED:  January 27, 2025                   *s/Douglas L. Micko*
                                           DOUGLAS L. MICKO
                                           United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).